UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60056-CR-RUIZ

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

BRANDON FLEURY,

        Defendant.
_____/

**MOTION TO DISMISS COUNTS 2, 3, AND 4 ON
FIRST AMENDMENT GROUNDS**

The defendant, Brandon Fleury, through counsel, respectfully moves to dismiss counts 2, 3, and 4 of the indictment as violative of the First Amendment of the United States Constitution, and in support thereof, Mr. Fleury states:

**Background**

**1.** Mr. Fleury is charged by indictment with four criminal offenses: one count of transmitting in interstate commerce, a communication containing a true threat to kidnap and injure the person of another, in violation of 18 U. S. C. § 875(c); and three counts of using a facility of interstate commerce to engage in a course of conduct reasonably expected to cause substantial emotional distress to victims with intent to harass and intimidate three separate victims, in violation of 18 U.S.C. § 2261A(2)(B).

**2.** Counts 2, 3, and 4 of the indictment specifically allege that from in or about December 2018, through on or about January 11, 2019, Mr. Fleury engaged

1

in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to three separate victims.

3. The indictment alleges that on February 14, 2018, gunman Nikolas Cruz fatally shot seventeen people at Marjory Stoneman Douglas High School, in Parkland, Florida ("the MSD shooting").

4. Nikolas Cruz was arrested about an hour and 20 minutes after the crime was committed. *See* Broward Sheriff's Office booking sheet and probable cause affidavit attached hereto as defense exhibit 1.

5. The MSD shooting was widely reported in the media and inspired several protests against gun violence. *See e.g.* 17 Killed in Mass Shooting at High School in Parkland, Florida, NBC News (February 14, 2018), available at https://www.nbcnews.com/news/us-news/police-respond-shooting-parkland-florida-high-school-n848101 (Last visited June 10, 2019); March for Our Lives Could be the Biggest Single-Day Protest in D.C.'s History (USA Today March 24, 2018), available at https://www.usatoday.com/story/news/nation/2018/03/24/march-our-lives-could-become-biggest-single-day-protest-d-c-nations-history/455675002/ (Last visited June 10, 2019).

6. The indictment alleges that victim 1 was a survivor of the MSD shooting and was the sister of one of the people killed in the MSD shooting.

7. The indictment alleges that victim 2 was a survivor of the MSD shooting and was the best friend of one the people killed in the MSD shooting.

8. The indictment alleges that victim 3 was the son of one of the seventeen people killed in the MSD shooting.

9. The indictment alleges that Instagram, Inc. operated an interactive computer service and electronic communication service accessible to users all over the world through mobile phones and electronic devices using the internet. Instagram allows its users to send direct messages to other Instagram users. When one Instagram users mentions another user, the user would receive a notification which displays the content of the comment or post.

10. Upon reviewing the criminal complaint, it is apparent that the course of conduct alleged in counts 2, 3, and 4 consists of messages wherein Mr. Fleury used user names such as "nikoloas.killed.your.sister," "bullseyetauntsyou," "angie.and.lola," "nik.taunts," "teddykillspeople," "nikolasthemurder," "bullseyeteaseshisvictims," and "dani.dont.give.two.fucks" to taunt victims 1, 2, and 3. *See* DE 18, Indictment, ¶ 1.

11. The taunts could be charitably described as cruel and mean spirited. The examples listed in the complaint included: "I killed your friend's baby girl;" did you like my valentines gift? I killed you friends;" "you'll never see Jaime again, little orphan, Nikolas took her from you;" "I killed Jaimie, fool;" "I'm her murderer" and "I stole your sister's future, buddy, with the power of my AR- 15." *See* DE 18, Criminal Complaint, ¶¶ 10-31.

12. The complaint alleges that these taunts began on December 22, 2019 and ended on January 11, 2019.

13. The complaint further alleges that upon the execution of a search warrant at Mr. Fleury's residence in Santa Ana, California, Mr. Fleury made post *Miranda* admissions. Fleury stated he was fascinated with Ted Bundy and other serial killers, and admitted posting the messages in an attempt to "troll" the victims, trying to "get reactions" from people and be controversial. Mr. Fleury further stated that he was motivated by gaining popularity and notoriety after posting the messages, and that he targeted shooting victim's family members who were activists and had large social media presences. DE 18, ¶ 39.

14. The word "troll" has taken on a new meaning in the age of social media. In this context, troll means "to harass, criticize, or antagonize (someone) especially by provocatively disparaging or mocking public statements, postings, or acts." *Washington Post v. McManus*, 355 F. Supp. 3d 272, 279, n.3. (D. Md. 2019).

15. Victims 1, 2, and 3 all have a social media presence wherein they discuss the MDS shooting and advocate for gun control and other policy initiatives.

` 16. Mr. Fleury submits that 18 U.S.C. § 2261A(2)(B) violates the First Amendment of the United States Constitution because it is overbroad. Under the overbreadth doctrine, the government is prohibited from banning unprotected speech, if a substantial amount of protected speech is prohibited or chilled in the process. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255, 122 S.Ct. 1389, 1404 (2002); *United States v. Dean*, 635 F.3d 1200, 1204 (11th Cir. 2011)

17. Moreover, Mr. Fleury submits that the course of conduct referenced in counts 2, 3, and 4 of the indictment consists of pure speech which does not fall

within any of the categories of unprotected speech--obscenity, defamation, true threats, fraud, incitement, and speech integral to criminal conduct. *See United v. Stevens*, 599 U.S. 460, 468, 130 S.Ct. 1577, 1584 (2010). Accordingly, under the facts of this case, § 2261A(2)(B) is a content-based restriction and unconstitutional as applied to Mr. Fleury's rights under the First Amendment.

## Argument and Memorandum of Law

A.    18 U.S.C. § 2261A(2)(B) is Facially Overbroad

The First Amendment commands, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. I; *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244, 122 S. Ct. 1389, 1398 (2002). As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its subject matter or its content. *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 1584 (2010). As a result, the Constitution demands that content-based restrictions be presumed invalid, and that the government bear the burden of showing their constitutionality. *United States v. Alvarez*, 567 U.S. 709, 715–17, 132 S. Ct. 2537, 2543–44 (2012) citing *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002).

The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere. *Free Speech Coal..*, 535 U.S. at 244, 122 S. Ct. at 1399. A statute maybe invalidated as overbroad and facially invalid if it can be applied to a substantial amount of protected speech. *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830,

1838 (2008). In determining whether a statute prohibits a substantial amounts of protected speech, the statue is judged in relation to the statute's plainly legitimate sweep. *Virginia v. Hicks*, 539 U.S. 113, 118–19, 123 S. Ct. 2191, 2196 (2003).

In this case, 18 U.S.C. § 2261A(2)(B) is unconstitutionally overbroad because it may be applied to a substantial amount of protected speech. 18 U.S.C. § 2261A(2)(B) provides:

> Whoever---with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that— causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to [that] person [or an immediate family member, spouse, or intimate partner of that person]

By its terms, the statute prohibits the use of the mail, interactive computer service, and other electronic means of communication to engage in speech that would cause substantial emotional distress to a person. As such, the statute would punish speech such as internet trolling and other communication that would simply be deemed annoying. Accordingly, this Court should declare § 2261A(B)(2) facially overbroad in violation of the First Amendment. *But see United States v. Ackell,* 907 F.3d 67, 77 (1st Cir. 2018), *cert. denied*, No. 18-7613, 2019 WL 358683 (U.S. May 13, 2019) (acknowledging that § 2261A(2)(B) could have an unconstitutional application but declining to hold statute facially overbroad).

### B. 18 U.S.C. § 2261A(2)(B) is Unconstitutional As Applied to Mr. Fleury's Rights Under the First Amendment

Even if this Court were to find that § 2261A(B)(2) was facially valid, and not overbroad, Mr. Fleury contends that the § 2261A(B)(2)I is unconstitutional as applied to the facts of this case. Although § 2261(A)(2) proscribes a "course of conduct," and course of conduct could include behavior other than speech, the course of conduct being prosecuted in this case is pure speech that the government deems offensive.

As stated earlier, the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Alvarez*, 567 U.S. 709, 715–17, 132 S. Ct. 2537, 2543–44 (2012) citing *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S.Ct. 1700 (2002). Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *Reed v. Town of Gilbert*, Ariz., 135 S. Ct. 2218, 2227 (2015)

Content-based restrictions on speech have been permitted only for a few historic categories of speech, including incitement, obscenity, defamation, speech integral to criminal conduct, so-called "fighting words," child pornography, fraud, true threats, and speech presenting some grave and imminent threat the Government has the power to prevent. *United States v. Alvarez*, 567 U.S. 709, 132 S. Ct. 2537, 2539, 183 L. Ed. 2d 574 (2012); *Virginia v. Black*, 538 U.S. 343, 360, 123 S.Ct. 1536, 1547 (2003). There is no categorical exception to the First Amendment for harassing or offensive speech." *United States v. Osinger*, 753 F.3d 939, 953 (9th

Cir. 2014). Here, Mr. Fleury's alleged harassing and intimidating fall into none of those historic categories of unprotected speech.

The Supreme Court has consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern. *United States v. Cassidy*, 814 F. Supp. 2d 574, 582 (D. Md. 2011). Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 1216 (2011). The arguably inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern. *Id.*

In *Snyder*, the Supreme Court *held* that church members who picketed the funeral of a Marine killed in the line duty with signs that read, "God Hates the USA/Thank god for 9/11," "America is Doomed," "Don't Pray for the USA," "Thank God for IEDs," "Thank God for Dead Soldiers," "Pope in Hell," "Priests Rape Boys," "God Hates Fags," "You're Going to Hell," and "God Hates You" was protected speech, and thus, set aside a verdict imposing liability for intentional infliction of emotional distress. *Snyder*, 562 U.S. at 459, 131 S. Ct. at 1219 (2011). The Supreme Court found that the speech was in a public place on a matter of public concern. Therefore, the speech was entitled to special protection under the First Amendment.

The jury in the *Snyder* case had been instructed that it could hold the church members liable for intentional infliction of emotional distress based on a finding that church members' picketing was "outrageous." *Snyder*, 562 U.S. at 458, 131 S. Ct. at 1219. However, the Supreme Court reasoned that "outrageous" was a highly malleable standard that was inherently subjective which would allow a jury to impose liability, based on the jurors' taste or views, or perhaps on the basis of their dislike of a particular expression. *Id*. The Court concluded that what the church members said, in the whole and context of how and where they chose to say it, was entitled to special protection under the First Amendment, and that protection could not be overcome by a jury finding of outrageousness. *Id*.

While the *Snyder* case is not factually identical to the instant case, the *Snyder* are sufficiently similar that *Snyder's* fundamental lessons are applicable to the instant case. Simply stated, Mr. Fleury is charged in counts 2, 3, and 4 of the indictment with using Instagram, to engage in a course of conduct that could cause substantial emotional distress, with the intent to harass. This is essentially the same conduct for which the *Snyder* defendants were found guilty in the district court. *See Snyder*, 562 U.S. at 450, 131 S.Ct. at 1214.

Mr. Fleury's speech took place in a public forum, Instagram. Mr. Fleury's speech was on a matter of public concern, the MSD shooting. Accordingly, as in *Snyder*, Mr. Fleury's speech is entitled to special protection under the First Amendment, a protection that cannot be overcome by claims of emotional distress or outrageousness.

9

The Supreme Court has declared the cyberspace, particularly social media, is the most important places for the exchange of views. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735, (2017). Accordingly, The Court has rejected the notion that online speech is somehow not worthy of the same level of protection as other speech. *See Reno v. ACLU*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997); *see also Ashcroft v. ACLU*, 542 U.S. 656, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004). Simply put, Mr. Fleury had a right to be inside his home posting on Instagram. *See Snyder*, 562 at 457, 131 S. Ct. at 1218.

In response to arguments that § 2262A encompasses protected speech, courts have stated that the statute clearly targets conduct performed with serious criminal intent, not just speech that happens to cause annoyance or insult. *United States v. Sayer*, 748 F.3d 425, 435 (1st Cir. 2014). Courts have also stated that the phrase, "intent to harass" and the term, "intimidate" must be read as referring to criminal harassment constituting a true threat. *United States v. Ackell*, 907 F.3d 67, 76 (1st Cir. 2018), *cert. denied*, No. 18-7613, 2019 WL 358683 (U.S. May 13, 2019).

In *Ackell*, the defendant was charged with violating § 2261A(2)(B). *Ackell*, 907 F.3d at 71. The defendant in *Ackell* was a forty-one year old man who convinced a sixteen year old to enter into a dominant-submissive relationship and send him sexually explicit photos of herself. *Id*. at 70. When the young girl wanted to end the relationship, the defendant threatened to disseminate the photographs he had saved to her friends, classmates and family. *Id*. at 71.

10

The *Ackell* defendant did not claim that his conduct was protected by the First Amendment. *Id*. Instead, he argued that § 2261(A)(2)(B) was facially overbroad and a content-based restriction on speech that did not survive strict scrutiny. *Id*. In rejecting the defendant's challenges, the *Ackell* court concluded that § 2261A(2)(B) targeted conduct and not speech. Id. at 74. The *Ackell* court further concluded that the § 2261(A)(2) targeted conduct performed with serious criminal intent, rather than speech protected by the First Amendment. *Id*.

Addressing the argument that § 2261A(2)(B) criminalizes protected speech, the *Ackell* court concluded that the term language "intent to harass" and the term "intimidate" as used in the statute referred to criminal harassment and intimidation which constituted a true threats. *Id*. at 76. However, the *Ackell* court acknowledged that §2261A(2)(B) could apply to "courses of conduct" which would implicate the First Amendment and concluded that as-applied challenges would safeguard First Amendment rights. *Id*. at 77.

Here, Mr. Fleury's courses of conduct reflected in counts 2, 3, and 4 of the indictment involve pure speech which do not constitute a true threat. Accordingly, this Court should dismissed counts 2, 3, and 4 as being unconstitutional as-applied to Mr. Fleury's constitutionally protected speech. *See United States v. Cassidy*, 814 F.Supp. 2d 574 (D. Md. 2011).

In *Cassidy*, the defendant used his Twitter account and blog to post derogatory messages toward a Buddhist Center and one of its prominent religious leaders *Cassidy*, 814 F.Supp. 2d at 579. The Buddhist Center and the religious

11

leader claimed that the defendant used the blogs to harass them. *Id*. It was further alleged that the defendant's tweets and blogs caused the religious leader substantial emotional distress. *Id*.

The defendant was charged under a prior version of § 2261A and was alleged to have violated the statute by intentionally causing emotional distress to the religious leader. *Id*. at 584. The *Cassidy* court found that the portion of the statute relied upon in the indictment amounted to a content-based restriction because it limited the speech on the basis of whether the speech was emotionally distressing to the religious leader. *Id*. As such, the *Cassidy* court applied a strict scrutiny analysis. *Id*.

In order to survive strict scrutiny, the government had the burden of showing the content-based restriction was necessary to serve a compelling state interest. *Id*. The *Cassidy* court found that protecting victims from emotional distress sustained through an interactive computer services was not a compelling interest. *Id*. at 85. The *Cassidy* court *held* the prior version of 2261A was unconstitutional as applied to the defendant, and granted the defendant's motion to dismiss.

## Conclusion

Mr. Fleury contends that the course of conduct that the government seeks to regulate is comprised of pure speech on a matter of public concern, that was made in a public space. Therefore, the speech is entitled to the special protection under the First Amendment. Mr Fleury further contends that the speech the government seeks to restrict does not fall within any of the traditional categories of unprotected

12

speech, incitement, obscenity, defamation, speech integral to criminal conduct, so-called "fighting words," child pornography, fraud, true threats, and speech presenting some grave and imminent threat the government has the power to prevent.

Mr. Fleury's speech when viewed in context, cannot reasonably be described as criminally harassing or constituting a true threat. Because the government is seeking to restrict Mr. Fleury's speech based on its content, the government must survive a strict scrutiny analysis. Here, the government's interest in protecting internet users from substantial emotional distress is not compelling.

Based upon the foregoing facts, arguments, and citations to authorities, Mr. Fleury respectfully requests that the Court grant his Motion to Dismiss Counts 2, 3, and 4 of the indictment on First Amendment Grounds.

        Respectfully submitted,

        MICHAEL CARUSO
        FEDERAL PUBLIC DEFENDER

By:   *s/Daryl E. Wilcox*
       Daryl E. Wilcox
       Assistant Federal Public Defender
       Florida Bar No.  838845
       One E. Broward Boulevard, Suite 1100
       Fort Lauderdale, FL 33301-1842
       (954) 356-7436
       Daryl_Wilcox@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on June 14, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

> By: *s/Daryl E. Wilcox*
> Daryl E. Wilcox