UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60056-CR-RUIZ

UNITED STATES OF AMERICA

vs.

**BRANDON MICHAEL FLEURY,**

    **Defendant.**
_____/

## GOVERNMENT'S NOTICE OF INTENT TO OFFER EVIDENCE OF UNCHARGED ACTS

The United States of America, by and through the undersigned Assistant United States Attorney, hereby gives notice of its intent to introduce evidence of certain uncharged conduct at trial. While the evidence of uncharged conduct is inextricably intertwined with the Defendant's charged conduct, and thus admissible without reference to Federal Rule of Evidence 404(b), the Government nonetheless includes such conduct in this notice in an abundance of caution. Even if the Court were to find that all of the conduct described below is subject to Rule 404(b), all of the evidence is properly admissible under that rule.

    **I.**    **BACKGROUND**

On February 21, 2019, a federal grand jury sitting in the Southern District of Florida returned a four-count Indictment against Brandon Michael Fleury ("the Defendant") [DE #18]. The Indictment charged the Defendant with one count of transmitting a communication containing a true threat, in violation of 18 U.S.C. § 875(c) (Count 1), and three counts of using a facility of interstate commerce, with intent to harass and intimidate, to engage in a course of conduct that

1

caused, attempted to cause, or would reasonably be expected to cause substantial emotional distress, in violation of 18 U.S.C. § 2261A(2)(B) (Counts 2, 3, and 4).

Count 1 stems from the Defendant's use of an Instagram account with the username "teddykillspeople" – which bore the profile picture of one of history's most notorious serial killers, Theodore "Ted" Bundy – to threaten relatives and friends of the students murdered during the February 14, 2018, mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida ("the MSD shooting"). The evidence will show that, approximately ten months after the MSD shooting, on Christmas Day, the Defendant used the "teddykillspeople" account to "mention"[1] Victims 1, 2, and 3 ("the victims"), and others, in the following message:

> I'm your abductor ["smiling" and "applauding" emojis] I'm kidnapping you fool [two emojis depicting a lock, an "applauding" emoji, and a "blowing a kiss" emoji][2]

The Defendant followed up this message with one claiming, "I killed Janice Ott and Denise Naslund." Ted Bundy had kidnapped and murdered both Ott and Naslund. In addition to these posts, the evidence will show that the Defendant kept thousands of screenshots of Ted Bundy on his personal electronic devices at the time that he sent these messages, and at the time of his arrest, admitted to being obsessed with Ted Bundy.

Counts 2 through 4 stem from the Defendant's use of multiple Instagram accounts to make dozens of posts that "mentioned" or "tagged" the victims. In late December 2018, the Defendant used the "nikolas.killed.your.sister" Instagram account – which bore the profile picture of the

---

[1] As described in the Indictment, when one Instagram user "mentions" another user(s), the mentioned user(s) receives a notification displaying the content of the comment or post. Thus, while the Defendant posted the comments on an Instagram page accessible to Instagram users at large, he directed the comments at, and to be delivered to, the particular victims whom he "mentioned."
[2] Emojis are small pictures or symbols used in text messaging or social media posts to convey emotions, or represent things or ideas.

alleged perpetrator of the MSD shooting, Nikolas Cruz – to target the victims. While using the "nikolas.killed.your.sister" account, the Defendant spoke in the first-person and "mentioned" Victim 1 – a survivor of the MSD shooting whose sister was one of the seventeen individuals murdered by Cruz – in various posts:[3]

- I killed your loved ones hahaha
- Cry for me
- Your grief is my joy
- With the power of my AR-15, I erased their existence [followed by smiling, applause, and handgun emojis]
- I gave them no mercy
- They had their whole lives ahead of them and I fucking stole it from them [followed by three "crying while laughing" emojis] hahaha
- I took [Victim 1's sister] away from you [followed by a string of "blowing a kiss" emojis]
- I took [Victim 1's sister] away from you. You'll never see her again hahaha
- I took a shit on your sister's grave [followed by a "crying while laughing" emoji, an applause emoji, and three "poop" emojis]

The Defendant also "mentioned" Victim 2 – another survivor of the MSD shooting and whose best friend was Victim 1's sister – in some of the above-quoted posts, as well as the following posts:

- I killed your friends, baby girl
- I'm a murderer
- Did you like my Valentines gift? I killed your friends
- I killed [Victim 1's sister and Victim 2's best friend] and it was fun
- You'll never see her again boo

The Defendant also "mentioned" Victim 3 – father of one of the students murdered in the MSD shooting – in the following Instagram comments:

- I killed your son
- I murdered [Victim 3's son]. I took him away from you
- I killed [Victim 3's son] and it was fun

---

[3] Given the volume of the Defendant's comments, the Government has not listed every comment the Defendant made to any of the victims. However, those quoted herein are representative samples of the Defendant's comments.

3

In addition to using "nikolas.killed.your.sister," the evidence will show that between December 22 and December 27, the Defendant used three other Instagram accounts – "bullseyetauntsyou__."; "angie.and.lola"; and "nik.taunts_" – to continue harassing Victims 1, 2, and 3 with messages similar to how "Nikolas" killed their loved ones. With the "nik.taunts_" account, the Defendant wrote messages in the first-person – just as he had done with the "nikolas.killed.your.sister" account – including the following:

> I shot [Victim 3's son] dead [Victim 3]. It was fun. You miss him huh? How's your Christmas without him?

Even after the Christmas holiday, the Defendant continued to "mention" the victims in comments through January 11, 2019. During this time, he used additional Instagram accounts: "tedtheabductor," "nikolasthemurderer," "the.douglas.shooter," and "nikolas.the.murderer_." While these comments continued to harass the victims about the deaths of their loved ones, some of the messages suggested the ability and desire to kill others, including the victims and their living family members. For example, while writing as "the.douglas.shooter," the Defendant said:

- With the power of my AR-15, you all die
- I'm a murderer. It's what I do, fool
- I'm a homicidal outrage, mother***ers!
- With the power of my AR-15, I take your loved ones away from you PERMANENTLY
- Hahaha! I'm the Douglas shooter! SCREAM!!

## II. **EVIDENCE OF UNCHARGED ACTS**

The Defendant's course of conduct targeted more people than just the three victims alleged in the Indictment. Many of the messages that "mentioned" Victims 1, 2, and 3 also "mentioned" other Instagram users associated with the MSD Shooting. For example, the kidnapping threat underlying Count 1 "mentioned" C.K., a survivor of the MSD shooting, as well as an account that

appeared to belong to (but did not actually belong to) F.G., the father of Victim 1 and whose daughter was killed in the MSD shooting. Other messages "mentioning" Victims 1, 2, or 3 also "mentioned" an account belonging to A.P., a father of another student killed at MSD. In many instances, the Defendant "mentioned" C.K. or A.P. alone. These messages, however, were all in the same vein as the messages directed towards Victims 1, 2, and 3.

The Government intends to introduce evidence of uncharged acts stemming from the Defendant's use of various Instagram accounts to harass and intimidate C.K., A.P., and others associated with the MSD shooting. This evidence is intrinsic and inextricably intertwined with the charged offenses as it is evidence of acts that are part of the same course of conduct and necessary to complete the story of the crime. In the alternative, the evidence is admissible under Rule 404(b) as evidence of the Defendant's intent, knowledge, absence of mistake, and modus operandi.

    A. <u>Inextricably-Intertwined Doctrine</u>

"Evidence of criminal activity other than the charged offense is not extrinsic within the meaning of Rule 404(b) if it is an uncharged offense that arose out of the same transaction or series of transactions as the charged offense." *United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995). Evidence of uncharged offenses is also considered intrinsic, not extrinsic, if it is necessary to complete the story of the crime or is inextricably intertwined with the evidence regarding the charged offenses. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998); *United States v. Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995). Such evidence pertaining to the chain of events explaining the context, motive, and set-up of the charged crime "is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account

5

of the crime, or is necessary to complete the story of the crime for the jury."  *McLean*, 138 F.3d at 1403 (quoting *United States v. Willford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).

   1. C.K. – Survivor of the MSD Shooting

On or about December 8, 2018, the Defendant used the "angie.and.lola" account to make the following comments in response to one of C.K.'s Instagram posts:

- How's [Victim 1's sister]? ["blowing a kiss" emoji]
- I like how Nikolas killed your loved ones ["blowing a kiss" emoji]
- Nikolas took away your loved ones ["smiley" emoji followed by a "clapping" emoji]
- [seven emojis depicting a gun]
- You'll never see them again. Their existence has been erased PERMANENTLY [three "blowing a kiss" emojis]

On December 22, 2018, three days before Christmas, C.K. posted on his Twitter account:

Happy holidays from me and the people sending me emails celebrating the murder of my classmates and teachers. Getting off the internet until after Christmas. Hope you have a great week with your loved ones.

Attached to the post was a screenshot of two emails that C.K. received from nikolastheshooter@gmail.com, an email account that the Defendant operated.  The subject heading for the emails read:

- How's [teacher murdered in the MSD shooting]? ;) Shot and killed huh? Poor baby hahaha
- Hahaha! Your loved ones are dead ;)

Evidence derived from the Defendant's electronic devices show that he targeted C.K. in a similar manner to the victims.   The evidence includes images of C.K. and his friends; screenshots of the Defendant's comments to C.K.'s Instagram posts while using the "nikolas.killed.your.sister" and "angie.and.lola" accounts; screenshots of C.K. posting the message regarding the emails he

6

received from the Defendant; and a screenshot of the comments of other Twitter users supporting C.K. for having received the aforementioned emails from the Defendant.

The Defendant began inflicting a barrage of harassing and intimidating online posts towards C.K. pertaining to the MSD shooting weeks prior to targeting the victims named in the Indictment. While still targeting C.K., the Defendant expanded his focus and sent similar messages to Victims 1, 2, and 3, and others. He used multiple Instagram accounts to send these harassing and intimidating posts, thereby effectively creating the impression that multiple individuals were targeting the victims. In spite of C.K.'s post regarding the emails he received from the Defendant, the Defendant did not stop. Notably, agents found screenshots of C.K.'s tweet on the Defendant's electronic devices. Searches of the Defendant's Instagram accounts also found a conversation between the Defendant and another Instagram user in which the Defendant boasted about being "blocked" by C.K. and how "I tried my best to make [C.K.] mad and I think I achieved that." He then reacted to C.K.'s tweet about going off social media by saying, "I took it way too far with my trolling but oh well."

Thus, evidence of the Defendant's online posts to C.K. are part of the same course of conduct that also targeted Victims 1, 2, and 3. This evidence also pertains to the context and set-up of the crimes charged in Counts 2, 3, and 4, and is necessary to complete the story of the crime for the jury. Furthermore, the Defendant's posts toward C.K., and his reactions to C.K.'s actions, demonstrate the Defendant's intent to threaten, harass, and intimidate, and show his awareness of the effect his conduct was having on his victims. Without this evidence, the Defendant could falsely claim that his conduct was "spur of the moment," that his comments were rooted in jest, or that he was unaware of the effects he was causing.

### 2. A.P. – Father Whose Daughter Died in the MSD Shooting

On or about October 18, 2018, approximately eight months after his daughter died in the MSD shooting, A.P. made an Instagram post calling for improvements in school security. Using the "angie.and.lola" Instagram account, the Defendant posted the following responses to A.P.'s post:

- [three "laughing" emojis]
- How's [A.P.'s daughter], hun? [three "blowing kisses" emojis]
- I like how Nikolas killed her ["smiling" emoji followed by a "clapping" emoji]

It did not stop there. The Defendant then began using the "bullseyekilledyourfather" Instagram account to make the following comments to the same post:

- Hahaha! Nikolas killed her in cold blood ["smiling" emoji, "clapping" emoji, another "smiling" emoji, and another "clapping" emoji]
- WHOO!!
- Nikolas stole her future [three "blowing kisses" emojis]
- You're never gonna "fix it," old man [three "laughing" emojis]
- Nikolas erased your daughter's existence ["smiling" emoji, "clapping" emoji, another "smiling" emoji, and another "clapping" emoji] That's why I'm laughing [two "laughing" emojis]
- I taunt you, old man ["crying while laughing" emoji, "clapping" emoji, "waving" emoji, and "smiling" emoji]
- Nikolas took your daughter away from you [three "blowing kisses" emojis]

Within minutes, the Defendant used yet another Instagram account – "nik.taunts_" – to harass and intimidate A.P.:

- I killed your daughter, [A.P.] ["waving" emoji followed by "smiling" emoji] hahaha It was fun.
- I took her away from you [three "blowing kisses" emojis]
- You'll never see her again ["crying while laughing" emoji, "clapping" emoji, "laughing" emoji, and "clapping" emoji]
- I'm her murderer ["smiling" emoji, "gun" emoji, and "thumbs up" emoji]
- ["smiling" emoji followed by "gun" emoji]
- Let me blow you a kiss, [A.P.] ["kissing" emoji]

8

- With the power of my AR-15, I erased her existence ["smiling" emoji, "gun" emoji" and three "clapping" emojis]
- I killed [A.P.'s daughter] ["blowing kisses" emoji]

A search of the Defendant's tablet computer seized from his bedroom found screenshots of a notification from Instagram, alerting the Defendant that it had removed some of the comments that he had made to A.P.'s post because it violated Instagram's policy against "violence or threat of violence."

The Defendant's harassing and intimidating comments towards A.P. began merely two months prior to the offenses alleged in the Indictment and continued during the time in which he harassed Victims 1, 2, and 3. In fact, the Defendant would "mention" A.P. in the same comments as the other victims. The manner in which the Defendant bombarded A.P. with comments mocking the death of his daughter through multiple Instagram accounts was similar in manner to how he would harass and intimidate the victims.

Thus, evidence of the Defendant's online posts to A.P. pertains to the context and set-up of the crimes charged in the Indictment, and is necessary to complete the story of the crimes for the jury. The warning he received from Instagram is significant evidence of the Defendant's knowledge that his comments were regarded as threatening and intimidating and thus is significant evidence of his intent is sending similar messages to Victims 1, 2, and 3. Furthermore, without this evidence, the Defendant could falsely claim that this was a "spur of the moment" decision that was rooted in jest.

B. Federal Rule of Evidence 404(b)

Even if the Court were to conclude that the Defendant's use of multiple Instagram accounts to harass and intimidate C.K., A.P., and others is extrinsic, the Court should still admit this

9

evidence under Rule 404(b) as evidence of the Defendant's intent, knowledge, absence of mistake, and identity.

>Federal Rule of Evidence 404(b) provides, in relevant part, the following:

>Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or lack of accident.

The Eleventh Circuit has held that evidence must meet three requirements to be admissible under Rule 404(b): 1) the evidence must be relevant to an issue other than the defendant's character; 2) the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and 3) the probative value of the evidence must not be substantially outweighed by undue prejudice, and the evidence must meet the requirements of Rule 403. *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998); *see also United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (quoting *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc) (footnote and internal citations omitted)).

Here, evidence of the Defendant's online posts to C.K., A.P., and others not identified in the Indictment is not meant to demonstrate a propensity or bad character. Rather, it is relevant to showing knowledge and intent – including the knowledge that the comments that he had posted violated Instagram's policy against violence and threats of violence, and caused or would reasonably be expected to cause substantial emotional distress to the intended recipients, both of whom were affected by the MSD shooting. The evidence is also relevant to showing intent, opportunity, absence of mistake, and modus operandi of the Defendant as it related to the charged conduct in the case.

There will be sufficient proof that the Defendant committed these acts. The Defendant used the same Instagram accounts to target C.K., A.P., and others as he used to target Victims 1, 2, and 3, or, in some cases, used accounts with usernames similar to those described in the Indictment. All of the accounts named in the Indictment were either created or accessed using the IP address assigned to the Defendant's home. Moreover, search of the Defendant's personal tablet computers seized from his bedroom found screenshots of messages posted to victims C.K., A.P., and others (in addition to Victims 1, 2, and 3), as well as pictures of some of these victims, and photos and data related to the personas the Defendant assumed in his Instagram usernames (including Nikolas Cruz, Ted Bundy, "Angie and Lola," and "Bullseye"). Furthermore, the Defendant's post-*Miranda* admission included admission that he sent messages to these people.

Finally, the probative value of this evidence is not substantially outweighed by the potential prejudice against the Defendant. While the Defendant's messages towards C.K., A.P., and other victims not mentioned in the Indictment are hurtful and repulsive, they are no more so than the similar messages he sent to Victims 1, 2, and 3. Therefore, there is no risk that evidence of messages to victims other than Victims 1, 2, and 3 are likely to inflame the jury more so than the messages underlying the charged conduct or otherwise cause undue prejudice.

### III.     CONCLUSION

The United States hereby gives notice of its intent to offer the above-described evidence at trial.  For the reasons stated above, the evidence should be admitted as inextricably intertwined with the charged offenses or, in the alternative, under Rule 404(b).

<div style="margin-left: 3em;">

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: /s Ajay J. Alexander
AJAY J. ALEXANDER
Assistant United States Attorney
Court ID No. A5502506
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, Florida 33394
(954) 660-5778 (telephone)
(786) 385-4604
ajay.alexander@usdoj.gov

</div>

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of July, 2019, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

<div style="text-align: right;">

s/ Ajay J. Alexander
AJAY J. ALEXANDER
Assistant United States Attorney

</div>