UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-60056-RAR

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**BRANDON FLEURY**,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
COUNTS 2, 3, AND 4 ON FIRST AMENDMENT GROUNDS**

**THIS CAUSE** came before the Court on Defendant Brandon Fleury's Motion to Dismiss Counts 2, 3, and 4 of the indictment as violative of the First Amendment of the United States Constitution, dated June 14, 2019 [ECF No. 50] ("Motion"). The Government filed a response on June 28, 2019 [ECF No. 53] ("Response") and Defendant filed a Reply on July 15, 2019 [ECF No. 55] ("Reply"). Having carefully reviewed the Motion, Response, and Reply and being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion is **DENIED** for the reasons set forth herein.

**BACKGROUND**

Defendant allegedly engaged in a course of conduct to harass, intimidate, and threaten relatives and friends of students and others killed during the mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida, on February 14, 2018 ("Parkland Shooting"). *See* Criminal Complaint [ECF No. 1]; Indictment [ECF No. 18]. Specifically, the Indictment charges the Defendant with one count of transmitting a communication containing a true threat, in violation

of 18 U.S.C. section 875(c) (Count 1), and three counts of using a facility of interstate commerce, with intent to harass and intimidate, to engage in a course of conduct that caused, attempted to cause, or would reasonably be expected to cause substantial emotional distress, in violation of 18 U.S.C. section 2261A(2)(B) (Counts 2, 3, and 4).

From on or about December 2018 through January 11, 2019, using a series of different Instagram accounts, Defendant made dozens of posts that "mentioned" or "tagged" the relatives and friends of the Parkland Shooting victims by inserting their Instagram usernames into Defendant's messages.  Defendant created several Instagram "handles," such as "nikolas.killed.your.sister," "bullseyetauntsyou__.," and "nik.taunts_," (apparently in reference to Nikolas Cruz, the individual accused of committing the Parkland Shooting) to taunt relatives and friends about the deaths of their loved ones. Further, under the username "nikolas.killed.your.sister," the Defendant spoke in the first person as if he were Nikolas Cruz, making comments to the victims such as "With the power of my AR-15, I erased their existence [followed by smiling, applause, and handgun emojis[1]]"; "I killed your friends, baby girl"; and "I killed your son."

Notably, several of Defendant's messages suggested the ability and desire to kill others, including the victims and their living family members.  For example, on December 25, the Defendant—then utilizing the username "teddykillspeople" and a profile picture of 1970s serial killer Ted Bundy—mentioned the victims and others, stating "I'm your abductor [smile and applauding emojis] I'm kidnapping you fool [followed by two emojis showing a lock, as well as

---

[1] "Emojis" are small pictures or symbols used in text messages or posts on social media to convey emotions or represent things or ideas.

applauding and "blowing a kiss" emojis].[2]  Writing as "the.douglas.shooter," Defendant said:

- "With the power of my AR-15, you all die"

- "I'm a murdered [sic].  It's what I do, fool"

- "I'm a homicidal outrage, mother****ers!"

- "With the power of my AR-15, I take your loved ones away from you PERMANENTLY"

- "Hahaha!  I'm the Douglas shooter!  SCREAM!!"

These threats, along with numerous other taunting comments, were directed to three people described in the Indictment as Victims 1, 2, and 3.  Victim 1 is a teenage survivor of the Parkland Shooting, whose sister was among those killed in the shooting.  Victim 2 is also a teenage survivor of the shooting and was the best friend of Victim 1's sister.  Victim 3 is the father of one of the students killed in the Parkland Shooting.

## ANALYSIS

In the Motion, Defendant maintains that 18 U.S.C. section 2261A(2)(B) is facially overbroad under the First Amendment and/or unconstitutional as applied to the Defendant.  The Court will address each of these arguments seriatim.

### I. Section 2261A(2)(B) is not facially overbroad.

Defendant maintains that section 2261(A)(2)(B) is unconstitutionally overbroad because it may be applied to a substantial amount of protected speech.  Mot. at 6.  However, a court may only find a statute to be facially overbroad based on a showing that the law "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep[.]'" *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601,

---

[2] This communication is the basis for Count 1, which charges the Defendant with transmitting a communication containing a true threat, in violation of 18 U.S.C. section 875(c).

615 (1973)) (reviewing the First Amendment overbreadth doctrine). All three United States Circuit Court of Appeals that have considered facial overbreadth challenges to section 2261A(2)(B) have rejected such challenges for two principal reasons: (i) the statute is directed towards "courses of conduct," not speech; and (ii) to the extent the statute does proscribe speech, the statute's criminal intent requirements narrow the statute's scope to speech that is unlikely to be constitutionally protected. *See United States v. Ackell*, 907 F.3d 67 (1st Cir. 2018); *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014); *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014); *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012).

### i. *Section 2261(A)(2)(B) regulates conduct, not speech.*

Section 2261(A)(2)(B) requires proof of four elements: (1) the defendant engaged in a course of conduct; (2) the defendant acted with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person; (3) the defendant used a facility of interstate commerce; and (4) the defendant's course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress." *Ackell*, 907 F.3d at 72. Thus, "[b]y its own terms, § 2261A(2)(B) regulates not speech, but . . . 'course[s] of conduct.'" *Id.*; *see also Petrovic*, 701 F.3d at 856; *Osinger*, 753 F.3d at 944. And although some courses of conduct are protected under the First Amendment, the terms of the statute cover "countless amounts of *unprotected* conduct." *Ackell*, 907 F.3d at 73 (emphasis added); *see also Hicks*, 539 U.S. at 124 ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or conduct necessarily associated with speech."). Further, simply because the statute names "common means of communication . . . one could use to commit the offense it defines, it does not necessarily follow that the statute targets speech." *Id.*

### *ii. Section 2261(A)(2)(B) does not punish a substantial amount of protected speech.*

To the extent section 2261(A)(2)(B) does proscribe speech, the criminal intent requirements in the statute narrow its scope to speech that is unlikely to warrant constitutional protection. "Because the statute requires both malicious intent on the part of the defendant and substantial harm to the victim, '[i]t is difficult to imagine what constitutionally-protected speech would fall under these statutory provisions.' Most, if not all, of the [statute's] legal applications are to conduct that is not protected by the First Amendment." *Petrovic*, 701 F.3d at 856 (quoting *United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004)); *see also Osinger*, 753 F.3d at 944 ("We agree with the Eighth Circuit's rationale [in *Petrovic*] that, because 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is no facially invalid under the First Amendment."); *Eckhardt*, 466 F.3d at 944 (finding a similar statute criminalizing harassing and threatening phone calls made with "an overarching purpose . . . to harass and frighten" were "not constitutionally protected."); *Ackell*, 907 F.3d at 74 (noting that section 2261A(2)(B) "is clear in that it targets conduct, specifically 'conduct performed with serious criminal intent,' rather than speech protected by the First Amendment."). And as explained by the First Circuit, speech that amounts to criminal harassment and intimidation would constitute either "true threats" or speech that is "integral to proscribable criminal conduct," both of which are categories of speech outside the protection of the First Amendment. *Ackell*, 907 F.3d at 74.

Thus, given that the plain language of section 2261A(2)(B) is directed towards conduct, not speech, and the statute does not punish a substantial amount of protected free speech in relation to its plainly legitimate sweep, section 2261A(2)(B) cannot be deemed facially overbroad.

### II. Section 2261A(2)(B) is not unconstitutional as applied to the Defendant.

Despite Defendant's contention that section 2261A(2)(B) is unconstitutional as applied to

the facts of this case, Defendant's comments, made with the intent to harass and intimidate, (i) fall within the "true threats" exception to the First Amendment and (ii) Defendant's speech was not a matter of public concern.

### i. *Defendant's conduct included "true threats."*

Speech made with the serious criminal intent to harass and intimidate constitutes "true threats" and is not protected by the First Amendment. *See Eckhardt*, 466 F.3d at 944; *Ackell*, 907 F.3d at 74; *see also Virginia v. Black*, 538 U.S. 343, 359 (2003) (holding "'true threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."). Here, Defendant made numerous comments indicating a serious expression of an intent to commit an act of unlawful violence towards the victims tagged in his messages. For example, the fact Defendant utilized the username "teddykillspeople"—thereby presenting himself as one of history's most notorious serial killers—communicated to Victims 1, 2, and 3 that he had the intent to kidnap, kill, or otherwise harm them. Moreover, in various messages sent over the course of several days, the Defendant characterized himself as Nikolas Cruz and proclaimed himself a "murderer"; threatened that "[w]ith the power of my AR-15, you all die"; and emphatically stated that "[w]ith the power of my AR-15 I take your loved ones away from you PERMANENTLY."

These messages did more than celebrate the death of the victims' loved ones. Instead, they implied an ongoing intent to commit *future* acts of violence. Stating "you all die" and an intent to "take your loved ones away" clearly displays an ongoing intent to kill those still alive, rather than those already murdered. Further, although Defendant's other messages do not communicate specific threats given that they took the form of taunting the victims, demanding that they scream or cry, or laughing at their pain, these messages cannot be viewed in isolation. Such messages,

when viewed within the context of Defendant's entire course of conduct, created the image of an anonymous and persistent tormentor out to harm the victims and cause them further pain and anguish. Thus, all of Defendant's messages contributed to precisely the sense of fear the "true threats" doctrine is intended to prevent.

### ii. *Defendant's speech did not address a "matter of public concern."*

Defendant posits that his harassing and intimidating conduct was nonetheless protected speech because it addressed a "matter of public concern." It is well-established that speech addressing matters of public concern receives greater First Amendment protection than speech on purely private matters. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (holding that "where matters of purely private significance are at issue, First Amendment protections are often less rigorous" because "[t]here is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas") (internal quotations and citations omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community . . . or when it is a subject of legitimate news interest; that is a subject of general interest and of value and concern to the public." *Id.* at 453.

Here, the content, form, and context of Defendant's speech illustrates that it cannot be fairly considered as relating or addressing a matter of public concern. There is no question that the Parkland Shooting has received significant media attention and continues to have a profound effect on the nation's consciousness when it comes to matters regarding school safety, gun control, or the treatment of mental illness. However, Defendant's messages and comments did not address these matters at all—they had no bearing whatsoever on political and social issues that continue to be of public interest. Defendant said nothing about the victims' statements or positions on such

issues nor did he attempt to address any of the victims' beliefs. Defendant's messages did not inform, argue, advocate, educate, explain, or criticize; they did not engage in any cognizable debate of interest to anyone. Instead, Defendant's messages focused only on exacerbating the victims' grief—a purely private matter.

Defendant's reliance on *Snyder* and *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), is also misplaced. The speech in *Snyder* involved political and social issues—namely, the acceptance of homosexuality in general and specifically, in the military—as well as scandals involving the Catholic Church. The protestors in *Snyder* carried signs conveying their views on these issues. *See Snyder*, 562 U.S. at 454 (concluding the "overall thrust and dominant theme of Westboro's demonstration spoke to broader public issues."). By contrast, Defendant's comments did not show any such "overall thrust" regarding public issues. Instead, he merely reminded the victims about the death of their loved ones in order to cause them emotional pain and make them believe they were in peril.

The Defendant's course of conduct is also distinguishable from the speech involved in *Cassidy*, where the district court dismissed section 2261A(2)(B) charges brought against a defendant who criticized "A.Z.," the known leader of a religious organization. 814 F. Supp. 2d 574. The Court in *Cassidy* emphasized that the criticisms "about A.Z. challenge her character and qualifications as a leader." *Id*. at 583. Here, none of the Defendant's comments reference any of the victims' public positions or attempt to criticize such positions. Nor do any of the Defendant's comments directly respond to any statements by the victims or others concerning the Parkland Shooting.

Instead, Defendant's statements are more akin to those in *Eckhardt*, where a former employee of a Teamsters Union made a series of harassing calls directed at a union employee he

had never met.  466 F.3d at 942.  The messages were sexually explicit and only incidentally mentioned union activity.  *Id.* at 942-44.  While the employee later maintained that his calls addressed matters of public concern—namely, alleged corruption within the union—the Eleventh Circuit found that "his calls rarely addressed anything that could be construed in that manner.  *Id.* at 944.  Rather, the Eleventh Circuit found that "the overarching purpose of Eckhardt's sexually laced calls was to harass and frighten [the victim].  This type of speech is clearly not constitutionally protected."  *Id.* (internal citation omitted).

Here, the Defendant's comments illustrate a strikingly similar purpose: to harass and frighten the victims without any mention whatsoever of an issue of public concern.  While the Defendant made most of his comments on a publicly available Instagram page, the page was completely unrelated to the Parkland Shooting, gun control, school safety, mental illness, or any other conceivable issue of public concern related to the Parkland Shooting.  And although there is no question that "in public debate [we] must tolerate insulting, and even outrageous speech[.]" *Snyder*, 562 U.S. at 458 (internal citations omitted), Defendant's speech fails to express any ideas related to a legitimate public interest and has no tangential connection to any form of public debate.  As such, Defendant's conduct is not entitled to First Amendment protection.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Brandon Fleury's Motion to Dismiss Counts 2, 3, and 4 of the indictment [ECF No. 50] is **DENIED**.

**DONE AND ORDERED** in Ft. Lauderdale, Florida, this 26th day of September, 2019.

_____
**RODOLFO RUIZ**
**UNITED STATES DISTRICT JUDGE**